VICK et al. v. PARK et al.  (No. 8066.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 19, 1914.)

1. FRAUD (§ 25*)—MISREPRESENTATION—DAMAGES.

Defendants, representing that the entire stock of a corporation was fully paid in, sold the whole of it to plaintiffs. Plaintiffs thereafter improved the property to an amount equal to the amount which was unpaid on the stock. Upon demand of the Secretary of State that they fully pay in the stock, they were allowed to set off the value of the improvements. *Held* that, as plaintiffs were not required to expend any moneys and received the benefit of such improvements, they could not recover for the misrepresentations of defendants.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 24; Dec. Dig. § 25.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

2. CORPORATIONS (§ 119*)—STOCK—EFFECT OF ACQUISITION.

Where plaintiffs acquired the entire stock of a corporation, all of the physical properties of the corporation were conveyed to them.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 499–503; Dec. Dig. § 119.*]

Appeal from District Court, Young County; Edgar Scurry, Judge.

Action by D. G. Vick and others against J. J. Park and another. From a judgment for defendants, plaintiffs appeal. Affirmed.

Arnold & Arnold, of Graham, and Kay & Akin, of Wichita Falls, for appellants. Stephens & Miller, of Ft. Worth, for appellees.

BUCK, J. The appellants D. G. Vick, J. H. Vick, Mary L. Manning, and Lillian Manning, as plaintiffs, filed this action in the district court of Young County, Tex., against J. J. Park and John E. Dowdle, on May 20, 1913, alleging that on or about the 24th day of June, 1909, appellants for a valuable consideration purchased the entire capital stock of the Graham Mill & Elevator Company, a corporation, from the appellees; that the capital stock consisted of 400 shares of the par value of $100 per share, and that the property of said corporation consisted of a flour mill and elevator, together with fixtures, machinery, furniture, etc., belonging to the same, situated in the town of Graham. In the petition it was further alleged that appellees were in full control of all of said property, having possession of the books and papers belonging to the same, and were charter members of said corporation, and were fully advised of the financial condition of said property and of said corporation; that appellees fraudulently, and for the purpose of swindling and deceiving appellants, knowingly, fraudulently, and falsely represented to appellants that the entire capital stock of said corporation, to wit, $40,000, had been fully subscribed and paid. The petition further alleged that appellants, believing such representations to be true, and relying on the same as true, paid the defendants in full for such entire capital stock of $40,000; that appellants did not learn of the fraud and deceit practiced on them by appellees, and did not learn the fact that such capital stock had not been fully paid until about the 15th day of January, 1913, when appellants learned from the Secretary of State that only the sum of $30,966.-93 of said capital stock had been paid into said corporation prior to the purchase of said stock by appellants; that appellants did not discover and had no means of discovering such facts until said January 15, 1913; that on learning that the capital stock was not fully paid in, and for the purpose of preventing the charter from being forfeited, the appellants were compelled to pay into said corporation the sum of $9,033.07; that such payment became necessary in order that the charter of such corporation for $40,000 might be maintained; and that appellants were compelled to make proof of such payment to the Secretary of State as aforesaid, and were damaged in the sum of $10,000. Appellants prayed for damages and costs of suit and general and special relief.

The appellees on August 28, 1913, filed their answer, consisting of a general demurrer and general denial and the plea of the two years' statute of limitations, and alleged that appellants knew, or could have known, by the exercise of proper diligence, more than two years before the institution of this suit, all of the facts in relation to the capital stock of said corporation, and as to how much had been paid in and as to the value of the assets of said company, and appellees prayed that they be released with their costs.

On March 18, 1914, the cause came on for trial before a jury on special issues, resulting in a verdict and judgment for appellees, from which judgment an appeal was perfected to this court.

It appears from the statement of facts that from September 1, 1909, to September 1, 1910, appellants made certain improvements, repairs, and necessary changes in the mill, which items aggregated the cost of $2,548.10, and from September 1, 1910, to September 1, 1911, made other improvements, the cost of which aggregated $1,923.64, and from September 1, 1911, to September 1, 1912, other improvements were made aggregating the cost of $1,735.57, and from September 1, 1912, to September 1, 1913, further improvements were made in the sum of $3,037.79, being a total of $9,245.10; and that, upon proof of expenditures for these improvements by appellants, the demand of the Secretary of State for the payment into the treasury of the corporation of the $9,033.07 was complied with and satisfied.

It appears from the statement of facts that during the trial of the case evidence was admitted to show what was the fair market value of the property given by appellants to appellees in exchange for the mill and elevator property stock, said property consisting of lands, town property, and a note for $13,500, and also evidence was introduced to show what was the fair market value of the physical properties belonging to said Graham Mill & Elevator Company. Under the assignments of error, appellants complain of the admission of such testimony over their objection.

In response to the special issues of fact submitted, the jury found, first, that the appellees had represented to the appellants in June, 1909, that the entire capital stock of the Graham Mill & Elevator Company, to wit, $40,000, had been fully subscribed and fully paid into said corporation; and, second, that said entire capital stock had been subscribed on said date; and, third, that the reasonable

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

market value of the improvements and additions made by appellees after September 22, 1908, when the application for a charter was made, and June 24, 1909, when the contract of sale between appellants and appellees was consummated, was $4,300; and, fourth, that the fair market value of the lands, town property, and notes given by appellants to appellees in the trade in controversy was $36,270; and, fifth, that the fair market value of the physical properties of the Mill & Elevator Company on June 24, 1909, was $35,266.93; and, sixth, that "D. J. Vick, by the exercise of reasonable diligence, could have discovered the amount of the capital stock of the Graham Mill & Elevator Company which had been paid in prior to June 24, 1909, more than two years before May 20, 1913"; and, seventh, that "D. G. Vick, by the exercise of reasonable diligence, could have discovered how much, if any, of the capital stock of the Graham Mill & Elevator Company had been paid in prior to two years before May 20, 1913"; and, eighth, that, in making the contract in controversy, the parties to said contract had in mind a trade by D. G. Vick for the properties owned by the corporation, and the capital stock of said corporation owned by the appellees.

[1, 2] From the foregoing statement of the case, and irrespective of whether or not the parties to this contract contemplated an exchange on the part of Vick and associates of certain properties, including lands, city property, and the note, for the physical properties of the Mill & Elevator Company, or whether it was contemplated that such contract involved the purchase and sale of the entire capital stock of the Mill & Elevator Company for a specified sum, we think that the appellants have utterly failed to show injury by reason of the verdict of the jury and the judgment of the court below. The evidence discloses that long prior to any demand by the Secretary of State upon Mr. Vick and associates for the payment into the treasury of the corporation the unpaid balance of the capital stock subscribed but not paid, to wit, $9,033.07, there had been made a large proportion of the improvements which Mr. Vick and his associates were permitted to prove and offer in lieu of, or in payment of, such unpaid balance, and that, if the $4,300 worth of improvements made by appellees between September 22, 1908, to June 24, 1909, should be added to the amount of the improvements made by Vick and associates, the total sum would exceed said $9,033.07. But, in any event, it is evident that the corporation, and consequently Vick and associates, received the benefit directly of such improvements made after and before the purchase of the capital stock by said Vick and associates, and we are unable to see how the appellants were injured. Moreover, it is apparent, by the purchase by Vick and

associates of the entire capital stock of the corporation, all of the physical properties of said corporation were conveyed to them and must have been so contemplated in the contract of sale. In this view of the case, the errors complained of in appellant's brief and the assignments predicated thereon become immaterial and are therefore overruled.

It is ordered that the judgment of the trial court be hereby affirmed.