RAISLER HEATING COMPANY, Appellant, *v.* WILLIAM J. TAYLOR COMPANY, Respondent.

First Department, June 8, 1934.

*Joseph J. Corn* of counsel [*Arthur G. Silverman* and *Myron Butler* with him on the brief; *Siegeltuch, Butler & Kraft*, attorneys], for the appellant.

*John H. Taylor*, for the respondent.

O'MALLEY, J. This action was brought to recover an alleged balance due under a written agreement between the parties. As plaintiff was nonsuited at the close of its case, the motion to dismiss was tantamount to a demurrer to the evidence. The broad question presented, therefore, is whether plaintiff's evidence, giving it every fair intendment, was sufficient to establish a *prima facie* case.

The defendant company contracted to erect a large office building known as the Canadian Pacific Building, situated at Madison avenue between Forty-fourth and Forty-third streets, New York city. The building was owned by the Madison Avenue Offices, Inc. (hereinafter referred to as the Madison Company). Of the 15,000 shares of common stock in the Madison Company, the defendant and its officers owned some 8,500.

The plaintiff had the contract for the steam heating work in the building. The defendant was in financial difficulty and made arrangements with plaintiff, and other contractors to which it owed money, to make payment in preferred stock of the Madison Company. Under date of May 1, 1922, a letter concerning settlement was addressed to the plaintiff. It recited the acceptance by plaintiff of 956 shares of the preferred stock of the Madison Company in payment for work done on the building; provided that so long as defendant owned or controlled any of the common stock of the Madison Company the plaintiff was " at liberty to exchange any * * * preferred stock to an equal amount of the common stock at the ratio of $50 par value for the preferred stock and $100 par value for the common stock, *i. e.*, your nine hundred and fifty-six (956) shares of the par value stock would be equalled by four hundred and seventy-eight (478) shares of the common or no par value stock."

This communication was on the letter head of the defendant company. It was signed by William J. Taylor, its president,

though his corporate title was not given, nor was the name of the defendant subscribed.

Plaintiff's evidence was to the effect that this writing did not embrace the entire agreement between the parties, in that it failed to provide that in case of a sale of the Canadian Pacific Building within six months after final payment on the preferred stock, plaintiff would have the option to adjust the value of the preferred stock on the basis of the value of the common stock of the Madison Company.

Some two years thereafter defendant notified plaintiff that the Madison Company was about to retire one-third of the 956 shares of the preferred stock held by the plaintiff. Thereupon plaintiff's representative called attention to the omission in defendant's letter of May 1, 1922. In compliance with plaintiff's request the defendant, this time over its own signature by Thomas B. Taylor, its treasurer, wrote: " In reference to the 956 shares of preferred stock of Madison Avenue Offices, Inc., held by you, it is mutually agreed between us that you are to accept cash payment for same. The first payment to you is outlined in letter of May 28, 1924, from Madison Avenue Offices, Inc., to you.

" In case Madison Avenue Offices, Inc., sells the Canadian Pacific Building within six months after final payment is made on preferred stock held by you, you have the option to adjust the value of the preferred stock which has been paid off in cash to you, on the basis of the value of the common stock of Madison Avenue Offices, Inc."

Thereafter, and in the spring of 1925, plaintiff still being the owner of 637 shares of preferred stock of the Madison Company, the defendant's representative at a conference with plaintiff's representative, stated that a " substantial profit had been made." Defendant paid plaintiff on June 5, 1925, the sum of $32,805.50 to retire the balance of the preferred stock of the Madison Company, then still held by plaintiff. Plaintiff also received a check for $24,380.31. This was a so-called adjustment.

The gravamen of plaintiff's cause of action is that it did not receive all of the profits to which it was entitled at this time and that a sale of the building had been made. The motion to dismiss was predicated upon three grounds: (1) That no sale of the building had been made, but merely that the entire outstanding stock of the Madison Company had been transferred; (2) that the adjustment with the plaintiff was upon the same basis as had. been made with common stockholders; and (3) that having accepted the adjustment without objection, plaintiff was bound thereby.

In our opinion no one of the grounds urged was sufficient to justify a dismissal. The mere fact that control of the building passed to third parties by transfer of stock of the Madison Company

rather than by outright sale does not necessarily lead to the conclusion that the building had not in fact been sold. It was the sole asset of the Madison Company. Defendant by making the adjustment payment of $24,380.31, seems itself to have recognized a sale of the building. Moreover, the contract for the transfer of the stock was in form a contract essentially for the sale of the building. The defendant and the common stockholders agreed with the transferee that at the closing the Madison Company would own no other assets than this building with personalty appertaining thereto and a bank balance. Apportionments of rents, taxes, etc., were to be made " as though this were a contract of sale of said real estate." The agreement had all the other usual terms of a contract of sale of real property. The brokerage to be paid was to be computed upon the basis of the regular brokerage of the sale of real estate and provision for contingencies that might arise " upon the closing of the transaction " were made. The common stockholders received back two mortgages made by the Madison Company aggregating the sum of $645,000. The fees on these mortgages were to be paid by the transferee of the stock. They were clearly tantamount to purchase-money mortgages.

Under these and other circumstances we are of opinion that a holding that the building itself had not been sold as between these parties under their written agreement would be to sacrifice substance to form. At best for the defendant there could have been but a question of fact as to whether a sale of the building itself had been made. A sale of all the stock of a corporation has been held to be a sale of its assets. (*Benedict* v. *Dakin,* 243 Ill. 384; *Vick* v. *Park,* [Tex. Civ. App.] 173 S. W. 989; *McCullough* v. *Sutherland,* 153 Fed. 418; *Brodsky* v. *Frank,* 342 Ill. 110; 173 N. E. 775.)

The second ground urged for dismissal at the trial was likewise untenable. Plaintiff's evidence tended to show the adjustment made with it was not on the same basis as that made with the common stockholders. The latter received purchase-money mortgages of which some part thereafter was apparently paid. Plaintiff, however, according to its evidence, received no part thereof.

Nor do we see any reason for sustaining a dismissal upon the third ground urged — that plaintiff, by receiving and accepting the adjustment without objection — was bound thereby. Plaintiff sues upon an express contract. At the time it received the adjustment payment, no dispute existed between the parties as to the amount due. Plaintiff merely relied upon defendant's representation. Under plaintiff's theory this was a misrepresentation. There was no accord and satisfaction. (*Schuttinger* v. *Woodruff,* 259 N. Y. 212.)

It follows, therefore, that the judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., MERRELL, GLENNON and UNTERMYER, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.