**DEMPSEY v. PINK, Superintendent of Insurance.**

**No. 156.**

Circuit Court of Appeals, Second Circuit.

Jan. 16, 1939.

Lee, Bond, Swan & Donoghue, of New York City (S. Wallace Dempsey and Bruce Fuller, both of Washington, D. C., of counsel), for appellant.

Edward F. Keenan, of New York City (J. Paul Brennan and J. Francis Lynch, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The defendant, the Superintendent of Insurance for the State of New York, is liquidating the National Surety Company, a New York corporation, pursuant to the provisions of the New York Insurance Law. Consol.Laws N.Y. c. 28. He took possession of it on April 29, 1933, for rehabilitation and on June 1, 1934, it having been found to be insolvent, he began its liquidation.

The plaintiff is an attorney-at-law who was and is a resident of the State of Maryland and who performed legal services for the corporation in two unrelated matters before it was taken over by the defendant. That his services were beneficial to the corporation and that it was bound to compensate him in accordance with its agreements with him are both admitted.

This bill in equity was brought to establish a right to preferential payment on the ground in the one instance that the plaintiff was entitled to an equitable lien upon funds in the hands of the defendant to the extent of the amount admittedly due him for prior services to the corporation; and in the other that he was entitled not only to a lien but to one for charges in excess of the sum already paid him by the defendant and which the defendant insists he accepted in full settlement for that work. On a former appeal from a decree denying a motion for summary judgment and dismissing the bill for lack of jurisdiction, we upheld the denial of a summary judgment but reversed as to jurisdiction and remanded for trial. Dempsey v. Pink, 2 Cir., 92 F. 2d 572. This appeal is from a decree dismissing the bill on the merits.

The National Surety Company had issued its bond to the United States to the amount of $325,000 to secure the payment to the government of income taxes for the

year 1928 which were assessed against the Southern Kansas Company. It employed the appellant as its attorney to protect its interests as the obligor on the bond and he did so with such success that the actual liability of the corporation was determined at $250,665.02 less than the principal amount of its bond. Appellant's fee for such services has been fixed at $25,000 and admittedly is allowable in that amount as a general claim against the estate of the corporation in liquidation. Apparently the general claims will not be paid in full and unless the appellant is entitled to a lien he must be content with his ratable share.

In order to have the benefit of a lien upon any fund in the hands of the liquidator, the appellant must show that there is a res to which a lien may attach. He has attempted to do that by insisting that his efforts brought about a saving to the corporation to the extent of the amount above mentioned. It is clear that there was a substantial reduction in the corporation's potential liability on its bond but it is equally clear that the appellant's services were not the means by which anything was brought into the corporation to increase its property.

The nearest approach to proof of a fund identifiable as the fruit of the appellant's services is found in the argument that under New York law the corporation was required, as indeed it was, N.Y.Ins.Law, Sec. 86, to set up a contingent reserve for such bonds as the one issued and the duty of the Superintendent of Insurance to see that it did so. From this the argument follows that both are now estopped from denying that they did perform their duty. And so it must be presumed that a fund was created which, when the maximum possible obligation on the bond was reduced, was released from the reserve. This amount so released, so it is urged, is the sum which the appellant recovered and the res to which his lien attached. Aside from the rather nebulous way in which it is attempted to give this so-called recovery an identity, there is nothing whatever to show that, assuming that a reserve was set up as the law required, there was any change made in it as a result of what the plaintiff did. Such a reserve would be not for this bond alone but for any others for which it was equally required. We cannot assume gratuitously that there was any separate reserve for this bond or that any property was actually released to the corpora-

tion from the reserve because it became possible to settle its liability under the bond for less than its face amount. Without that, there can be no res to which any lien may attach in favor of the appellant and we need not deal with the usual right of an attorney to a lien, either statutory or otherwise, upon what he actually recovers for his client. Nor was there any agreement that the attorney should be paid from any particular fund or property. In the absence of any recovery, proof of such an agreement together with a definite appropriation by the debtor of a specific fund or property to be used to fulfill the agreement would be necessary to the creation of a lien. Ingersoll v. Coran, 211 U.S. 335, 368, 29 S.Ct. 92, 53 L.Ed. 208; James v. Alderton Dock Yards, Ltd., 256 N.Y. 298, 304, 176 N.E. 401. This appellant merely performed legal services for the corporation for which he was to be paid out of any funds of his client. His standing is only that of a general creditor in the proceedings for liquidation.

The case of Brooks v. Mandel-Witte Co., 2 Cir., 54 F.2d 992 is not in point for the reason that the refunds obtained there constituted a fund to which the statutory attorney's lien attached. There was also a refund in Cunningham v. Sizer Steel Corporation, D.C., 1 F.2d 653, but apparently not so great in amount as the lien which was given effect. The fund upon which the lien was established was said "to have been brought into this court during the pendency of a suit in equity by the exertions of the petitioners" and so the decision may be in accord with the principles here stated. To the extent that it may not be, however, it is not controlling.

The second phase of the appeal has to do with a claim for services in respect to a bond the corporation had executed to the United States as surety for the performance of a contract by one Alex Ranieri, the principal on the bond, to construct a levee for the government on the Mississippi River. Ranieri failed to perform and the contract was relet by the United States. Ranieri claimed the government had made misrepresentations in the specifications on which the contract was based and employed the appellant to represent him as his attorney. The National Surety Company was, of course, interested as the surety on Ranieri's bond and joined in the employment of the appellant. It paid him $1,000 as a retainer and agreed to pay him a contingent fee

based upon a percentage of the difference between the face amount of the bond and any sum which the surety might have to pay to discharge its liability. This matter was pending when the corporation was taken over by the appellee. While the matter was still pending and on or about October 19, 1933, the liquidator asked the appellant to present his bill for services in connection with it. He did so by sending in a bill for services from May 15, 1933 to October 19, 1933 to the amount of $5,000. Though there is now a suggestion that this bill did not include all of the appellant's charges against the appellee to the date it was rendered, Exhibits B-19, B-23, B-24, B-25, B-26 and B-27 show conclusively that the parties both then understood that it did. There was some negotiation as to what amount would be satisfactory to both as a settlement upon a quantum meruit basis. Among other things considered was the probability that appellant would be called upon for additional services in the matter though there was no actual undertaking to employ him in the future. The appellant did finally reduce the amount of his bill to $1,500 which was duly paid to, and accepted by, him. The covering letter to him stated that the check was "in payment of your fee for all services rendered up to December 5, 1933, in the above matter".

After it had been found that the corporation would have to be liquidated, Ranieri wanted to sue the government and the appellant wrote to one Garner that he did not care to go on with the suit "unless I am retained by the Surety Company as well as Ranieri" and asked "whether I still represent the Surety Company or not". The letter was turned over to a representative of the appellee who wrote the appellant that he understood that his bill for services had been adjusted "when the National Surety Company was in rehabilitation, and at that time there was a probability we would finance, if necessary, Ranieri's proposed suit against the Government. Since that time, the National Surety Company, as you know, has been placed in liquidation which considerably changes the complexion of this entire matter". The request for a further retainer was accordingly refused.

■ The trial court was amply justified in finding that the appellant performed no services for which the appellee is liable after the payment of the $1,500 and also in finding that that payment was made and received in accord and satisfaction for all his charges up to that time.

■ There was an original employment of the appellant by the corporation upon a contingent fee basis; the recognition of that employment by the appellee after he took over the corporation in rehabilitation; and his acceptance of appellant's services in the matter for a time. Then both parties desired to arrive at a settlement for all the appellant's past services in the matter and they had a real dispute as to a reasonable amount to be paid in full settlement upon a quantum meruit basis. This was finally resolved and the payment made and accepted. Thus the essential elements which make up an accord and satisfaction were present and the adjustment then made is final and binding. Schuttinger v. Woodruff, 259 N.Y. 212, 181 N.E. 361; Ansberry v. Harrah, 65 App.D.C. 80, 80 F.2d 381. See also Chicago, M. & St. P. R. Co. v. Clark, 178 U.S. 353, 20 S.Ct. 924, 44 L.Ed. 1099. That being so, other questions raised are of no consequence.

Decree affirmed.