

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

~~XXXXX XXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Affirmed by _M-124_

Hon. James E. Kilday, Director
Motor Transportation Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-2644
Re: Whether Railroad Commis-
sion is required to approve
sale and transfer of the capi-
tal stock in a corporation
holding a motor carrier permit.

In your letter of August 29, 1940, you advise us of the following:

"Dunn Brothers, Inc., a Corporation, duly in-
corporated and existing under and by virtue of
the laws of the State of Texas, owns a contract
carrier permit and a special commodity carrier per-
mit heretofore issued by the Railroad Commission
under the Motor Carrier Law of Texas.

"Carl H. Dunn, President of the Corporation,
has filed an application for the Commission's ap-
proval of the sale and transfer of the capital
stock in said corporation to Harry Gowins, Jr.,
setting out in the application that the Corpora-
tion owns Contract Carrier Permit No. 11160 and
Special Commodity Permit No. 31981."

You request our opinion in response to the following questions:

"1.   Is the Railroad Commission required to
approve applications for the sale and transfer of
the capital stock in corporations holding certifi-
cates or permits issued under the Motor Carrier Law
of Texas, before such stock can be transferred?

"2.   If your answer to Question 1 is in the
affirmative, are we required to collect a filing
fee with such applications?

"3.   If we are required to collect a filing
fee, should we collect only one filing fee of ten
dollars, where more than one permit is owned by the
Corporation transferring the stock, or should we
collect a ten dollar filing fee for each permit
owned by said Corporation?"

Section 6 (f) of Article 911b, Vernon's Civil Statutes, reads:

"Any contract carrier permit held, owned, or obtained by any motor carrier operating under the provisions of Section 6 may be sold, assigned, leased, transferred, or inherited; provided, however, that any proposed sale, lease, assignment, or transfer shall be first presented in writing to the Commission for its approval or disapproval and the Commission may disapprove such proposed sale, assignment, lease or transfer if it be found and determined by the Commission that such proposed sale, assignment, lease, or transfer is not in good faith or that the proposed purchaser, assignee, lessee, or transferee is not capable of continuing the operation of the equipment proposed to be sold, assigned, leased, or transferred in such a manner as to render the services demanded in the best interest of the public; the Commission in approving or disapproving any sale, assignment, lease, or transfer of any permit may take into consideration all of the requirements and qualifications of a regular applicant required in this Section, and apply same as necessary qualifications of any proposed purchaser, assignee, lessee, or transferee; provided, however, that in case a permit is transferred that the transferee shall pay to the Commission a sum of money equal to ten (10) per cent of the amount paid as a consideration for the transfer of the permit which sum of ten (10) per cent shall be deposited in the State Treasury to the credit of the Highway Fund of the State; provided, however, that any permit obtained by any motor carrier or by any assignee or transferee shall be taken and held subject to the right of the State at any time to limit, restrict, or forbid the use of the streets and highways of this State to any holder or owner of such permit. Every application filed with the Commission for an order approving the lease, sale, or transfer of any permit shall be accompanied by a filing fee in the sum of Ten Dollars ($10) which fee shall be in addition to other fees and taxes and shall be retained by the Commission whether the lease, sale, or transfer of the permit is approved or not. Added Acts 1939, 46th Leg., p. 89, § 1."

The Railroad Commission is given no authority regarding the transfer of shares of stock in private corporations, even in those corporations holding motor carrier permits and certificates of convenience and necessity. This question doubtless arises out of the thought on the part of the person

acquiring the stock that the view might be taken that a sale of the capital stock is tantamount to a sale of all the assets, including the permit, as suggested under a particular state of facts in Vick v. Park, 171 S.W. 1039 (the identical opinion being reported also in 173 S.W. 989). However, we do not believe such a doctrine would be applied in such a way as to require the Railroad Commission to approve a sale and transfer of the stock in a corporation owning a permit. The tangible property of a corporation belongs to the corporation as such, the stockholders merely owning intangible interests in the corporate business. Turner v. Cattlemen's Trust Co., 215 S.W. 831, Com. App.; Automobile Mortg. Co. v. Ayub, 266 S.W. 134, Comm. App.

We do not believe there exist sufficient reasons for the courts to disregard the corporate fiction and treat the transfer of the stock as a transfer of the permit. The financial strength of the corporation itself is not impaired by the sale of stock. If the service is not kept up or the permit is otherwise abused remedies are provided in Article 911b. See Section 12 (b). Under the facts as stated, your first question is given a negative answer.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Glenn R. Lewis
Glenn R. Lewis, Assistant

APPROVED SEP 13, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:      BWB, CHAIRMAN

GRL:RS:wb