**HAMMOND FORD, INC., Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

United States District Court
S. D. New York.
April 24, 1962.

Taylor, Scoll, Ferencz & Simon, New York City, for plaintiff; Telford Taylor, Benjamin B. Ferencz, Kenneth Simon, New York City, of counsel.

Hughes, Hubbard, Blair & Reed, New York City, for defendant; L. Homer Sur-

beck, Jerome G. Shapiro, Robert M. Byrn, New York City, of counsel.

WEINFELD, District Judge.

At the conclusion of the extensive argument of this motion, the Court expressed a tentative view that the matter was not ripe for summary disposition under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Since then, a careful reading of the voluminous affidavits and exhibits in support of and in opposition to the motion, as well as consideration of the authorities, has confirmed the Court's original impression.

The defendant seeks judgment of dismissal of plaintiff's suit which, in five separate causes of action, charges that defendant violated the Automobile Dealers Franchise Act[1] and the Sherman and Clayton Acts.[2] The motion for summary judgment is based on the defendant's first affirmative defense, which is two-pronged: (1) that an agreement of the parties dated April 14, 1959 whereby plaintiff resigned as a Ford dealer was a compromise and settlement which operated as a release and discharge of all five claims or causes of action now asserted by plaintiff, and (2) that an accord and satisfaction resulted when plaintiff accepted a payment made to it by the defendant under the April 14, 1959 agreement after the defendant requested, and plaintiff refused, to execute a general release of all claims.[3]

As to the first contention, that the agreement of April 1959 constituted a settlement and compromise of all claims and causes of action in favor of plaintiff, including those now asserted, the issue is one of fact—the intention of the parties—to be determined against the background facts and in proper perspective.[4] The defendant alleges that such was their agreement; the plaintiff asserts to the contrary. While it may be true, as the defendant states, that the issue is not to be resolved by subjective intent,[5] "in ascertaining what meaning to impute, the circumstances in which the words are used is always relevant and usually indispensable. The standard is what a normally constituted person would have understood them to mean, when used in their actual setting."[6]

Singularly, the letter agreement of April 14, 1959 is silent on the subject of settlement, compromise, release or discharge of any suits, claims or causes of action. It had its genesis in a notice of termination of plaintiff's franchise as a Ford dealer exercised by defendant under their then existing agreement referred to as the "1955 Ford Sales Agreement." Plaintiff sought to persuade defendant to withdraw the termination notice in various conferences with defendant's representatives and through correspondence. After extensive negotiations it was agreed that plaintiff would be permitted to "resign" its dealership. The

---

1. 15 U.S.C.A. §§ 1221–1225.

2. 15 U.S.C.A. §§ 1–2 and 15 U.S.C.A. § 14.

3. The moving defendant apparently assumes New York law is applicable; plaintiff contends that under a clause of the original agreement between them Michigan law controls. The parties do not disagree, however, that for purposes of this motion the pertinent principles of the laws of both jurisdictions are the same. Compare Jennison v. Stone, 33 Mich. 99, 101 (1875), and Stadler v. Ciprian, 265 Mich. 252, 262, 251 N.W. 404, 407 (1933), with Schuttinger v. Woodruff, 259 N.Y. 212, 181 N.E. 361 (1932), and Hudson v. Yonkers Fruit Co., 258 N.Y. 168, 179 N.E. 373, 80 A.L.R. 1052 (1932).

4. Cf. United Nations Korean Reconstr. Agency v. Glass Prod. Methods, Inc., 184 F.Supp. 51, 60 (S.D.N.Y.1960), aff'd in part and rev'd in part on other grounds, 291 F.2d 168 (2d Cir. 1961); see Simons v. Supreme Council American Legion of Honor, 178 N.Y. 263, 269, 70 N.E. 776 (1904).

5. Cf. Judge Frank, concurring, in Ricketts v. Pennsylvania R. R., 153 F.2d 757, 761, 164 A.L.R. 387 (2d Cir. 1946).

6. Judge Learned Hand, in New York Trust Co. v. Island Oil & Transp. Corp., 34 F. 2d 655, 656 (2d Cir. 1929). See also, Walsh v. New York Cent. & H. R. R. Co., 204 N.Y. 58, 64, 97 N.E. 408, 37 L.R.A., N.S., 1137 (1912); Restatement, Contracts § 235d, comments e and f (1932).

form of the agreement was drafted by defendant and plaintiff was required to accept it as drawn.[7] It provides that plaintiff "terminates" its Ford Sales Agreement of 1955; it requires the defendant to make payments to plaintiff in reimbursement for parts and accessories, tools, equipment and leasehold items. The defendant was obligated to reimburse plaintiff for such items under the 1955 agreement between them which was the subject of termination; however, the defendant agreed to reimburse plaintiff, not at the scheduled rates under their 1955 sales agreement, but at the more favorable rates which would be payable to a dealer terminated under the defendant's new 1957 sales agreement (in effect with dealers other than plaintiff); the defendant also agreed to make other payments without reference to either the 1955 or 1957 Ford Sales Agreement. In addition, defendant agreed to consider appointment of plaintiff as a Ford dealer in another location within the New York district of the Ford Division.

As already stated, the agreement of April 1959 (whether it be a "resignation" or a "termination," itself a subject of dispute between the parties) contains no reference to any settlement, compromise or release. The defendant, to establish its position that such was the purpose of the parties and, in any event, that the legal effect of the agreement was to settle and compromise all claims, relies upon the provision thereof wherein the defendant agreed to grant to plaintiff "the benefits of paragraph[s] 21(b), * * * 21(c), * * * 21(d), * * * and paragraph 22 * * * of the new form of Ford Sales [1957] Agreement * * * " covering parts and accessories, signs, tools and mechanical equipment and dealer premises. These paragraphs themselves are silent as to any release or settlement of claims. However, paragraph 23 of the 1957 sales agreement provides that a terminated dealer receiving the benefits provided for in paragraphs 21 and 22 shall execute and deliver a general release to Ford. In substance the defendant's position is that the plaintiff, by agreeing to accept the increased benefits provided for in paragraphs 21 and 22 of the 1957 form of sales agreement, by "necessary implication" signified its assent as a condition of the increased payments that it execute the release called for in paragraph 23, discharging the defendant from all liability, however claimed to arise. The defendant also urges "incorporation by reference" of the release provision of paragraph 23.

The defendant's contention of "necessary implication" and "incorporation by reference" contains its own refutation— at least insofar as its motion for summary judgment is concerned. The parties were not governed by the 1957 sales agreement but by that entered into in February 1955. Under the latter agreement, the only one then in effect between them, Ford, upon the termination of plaintiff's franchise, was obligated to reimburse plaintiff for parts and accessories, signs, tools and equipment and certain lease items. Ford's 1957 sales agreement contained a substantially similar provision but, as already noted, the payments thereunder were more liberal than those provided for under the 1955 sales agreement. Paragraphs 21 and 22 of the 1957 agreement were used as a yardstick to reimburse plaintiff for parts and accessories and the like. However, this was not the sole measure of reimbursement. The defendant also agreed to reimburse plaintiff for items which were not payable to a terminated dealer under either the 1955 or 1957 agreement. The parties were cancelling their 1955 agreement and, in part, one purpose of the defendant was to give the franchise to another dealer under what it believed would be a more advantageous arrangement to it. The fact that defendant was prepared to increase the payments to plaintiff to terminate its agency, whether

---

**7.** Plaintiff retyped the draft on its own letterhead; it was formally submitted to defendant, which in due course accepted.

it be the result of resignation or termination, would not automatically bring into play other provisions of the 1957 form of sales agreement or substitute all the provisions of the newer form for the one which was then in effect between them unless such was their intention.

Apart from its position that the release provision of paragraph 23 became effective, the defendant also contends that the parties contemplated the discharge of the very claims upon which this suit is based. Again, to support its position, it must go beyond the four corners of the agreement since, just as there is no mention of a release therein, there is also an absence of any reference to the compromise of any claim, cause of action or lawsuit. Nonetheless, the defendant urges that "plaintiff in effect threatened suit" and "potential claims for antitrust treble damage claims were also evident"; [8] but this argument rests upon a fragmentation of various sentences contained in correspondence or data submitted by plaintiff to defendant's Dealer Policy Board in which plaintiff, in pressing for the withdrawal of the termination notice, asserted that defendant, by specified activities, had prevented plaintiff from turning in a more creditable performance under its franchise. Defendant culls from these sentences isolated words and phrases such as "intimidation and coercion," "fair or equitable," "threats," "pressures" and "termination," and relates these to words in the Automobile Dealers Franchise Act to support its claim that in effect plaintiff threatened suit. But these must be read in proper context; they contain no threat to sue nor the assertion of any claim either under the Dealers Act or any antitrust law. Plaintiff's counterposition that at no time did it mention, threaten or assert any claim or lawsuit, is not successfully controverted on the papers submitted on this motion.

As this Court stated upon the argument:

"[It is] difficult to understand why, in a transaction of this kind, engaged in by experienced men, there should not have been a very simple reference that on payment of the amount agreed upon herein the Hammond Company should execute a general release."

Perhaps this is what the parties did intend, but the agreement on its face or in words does not show with sufficient clarity that such was their purpose,[9] and clearly this issue should not be disposed of under the summary judgment rule.

The defense of accord and satisfaction rests upon no stronger ground than the plea of settlement and compromise for purposes of a motion for summary judgment. Essentially it, too, revolves about the defendant's contention that the April 1959 agreement entitled it to a release.

The defendant made two payments as required under that agreement without any request or demand for a release, but shortly before the third payment, $18,000, was due a representative of defendant telephoned plaintiff's president and requested a general release which Hammond promptly refused, stating that defendant was not entitled to it and was trying to change the April 1959 agreement. The same official, several days thereafter, renewed the request and again it was refused and, according to Hammond, the demand was abandoned. Nonetheless, on that very day, and in the face of the repeated denial that the agreement entitled defendant to a release, Ford delivered to plaintiff the $18,000 which was due with a letter which in part states that the check was being submitted "with the understanding that you will execute a formal release to the Ford Motor Company for any and all liabilities arising out of your resignation and former dealership * * *." Plaintiff cashed the

---

**8.** Defendant's Memorandum of Law, pp. 19–20.

**9.** Cf. Arbuckle v. American Lumbermens Mut. Casualty Co., 129 F.2d 791, 793 (2d Cir. 1942); Kenyon v. Knights Templar and Masonic Mutual Aid Ass'n, 122 N.Y. 247, 254, 25 N.E. 299 (1890).

check but did not send the release. The defendant thereafter, over a period of six months, made four additional payments to plaintiff in excess of $25,000, although it had not received the release and made no further request for it. It now contends that the acceptance of the $18,-000 check constitutes an accord and satisfaction as a matter of law.

The defense rests upon the assumption that there was a bona fide dispute between the parties as to defendant's claim for the release. To be sure, after the first two payments had been made by defendant without assertion of such a claim, it did request in connection with the third payment such a release, which promptly was refused on the ground this was contrary to their agreement; to this extent it may be said there was a dispute. But the mere controversy, in and of itself, does not mean that in fact there did exist a genuine dispute. An accord and satisfaction presupposes an unliquidated claim and a bona fide dispute.[10] The test is not a mere matter of semantic controversy, but was the dispute honest or feigned?[11] While it is true that the fact that a debtor may be wrong in its contention or view of the law does not defeat a defense of accord and satisfaction, the issue still remains whether it honestly believed in the correctness of its position—that is, its good faith in advancing the claim is still central to the plea.[12] Thus, the issue presented is related to the question posed under the defense of settlement and compromise—whether there was more than a colorable claim for the release under the agreement. Here the amounts due under the April 1959 agreement were fixed and clearly liquidated. However, the defendant reasons that since the $18,-000 payment was provided for in the agreement, it cannot be separated from other provisions and that when Ford asserted "something more than a colorable claim to the release," the $18,000 "became unliquidated"; but this argument assumes the very essential fact at issue—whether the claim to the release was bona fide. If there was no genuine basis for the defendant's position it could not by its letter accompanying a payment, admittedly due, put plaintiff in the position either of accepting the check at peril of effecting an accord and satisfaction or bringing suit to compel payment.

The plaintiff stresses the absence of any obligation in the agreement to execute a release and the fact that at no time during the course of the negotiations leading to the agreement or thereafter did the defendant, up to the time that it made the third payment, ever request a release, nor did it do so thereafter, and accordingly urges that the request is feigned and pure afterthought; plaintiff further emphasizes the failure to request a release after the third payment to support the claim by its president that defendant abandoned its request when it was refused a second time.[13] Defendant, of course, advances the same arguments urged in support of the first defense, which of necessity involve collateral matters going beyond the words of the written agreement. Thus, whether the defendant in good faith was asserting its

10. Fleming v. Post, 146 F.2d 441, 158 A.L.R. 1384 (2d Cir. 1944); Dempsey v. Pink, 101 F.2d 72 (2d Cir.), cert. denied, 307 U.S. 639, 59 S.Ct. 1037, 83 L. Ed. 1520 (1939); Schuttinger v. Woodruff, 259 N.Y. 212, 181 N.E. 361 (1932); Hudson v. Yonkers Fruit Co., 258 N.Y. 168, 174, 179 N.E. 373, 80 A.L.R. 1052 (1932); Raisler Heating Co. v. William J. Taylor Co., 241 App.Div. 355, 272 N.Y.S. 355 (1934). Cf. Prudence Co. v. Fidelity & Deposit Co. of Maryland, 77 F.2d 834 (2d Cir. 1935).

11. See Post v. Thomas, 212 N.Y. 264, 273, 106 N.E. 69 (1914); Simons v. Supreme Council American Legion of Honor, 178 N.Y. 263, 269, 70 N.E. 776 (1904).

12. Cf. Fire Insurance Ass'n v. Wickham, 141 U.S. 564, 577, 12 S.Ct. 84, 35 L.Ed. 860 (1891); Schnell v. Perlmon, 238 N.Y. 362, 371, 373, 144 N.E. 641, 34 A.L.R. 1023 (1924); Walmor, Inc. v. Breger, 237 App.Div. 614, 262 N.Y.S. 409 (1933).

13. Cf. Gaston & Co. v. Storch, 253 N.Y. 68, 71, 170 N.E. 496 (1930).

claim to a general release so that it can be said that a bona fide dispute existed between the parties is itself a question of fact [14] which, in the light of all the circumstances, may not properly be disposed of on affidavits.

The motion is denied.

---

14. Schuttinger v. Woodruff, 259 N.Y. 212, 181 N.E. 361 (1932).